SARA H. HELFAND,
Plaintiff,

*vs.*

A. S. GAMBEE, W. E. MICHEL, J. R. DILLON, H. D. COX, E. G. HINES, S. P. SKOURAS, H. G. PLACE, S. R. KENT, H. D. CAMPBELL, DAN MICHALOVE, SIDNEY TOWELL, D. A. HENDERSON, W. W. KEITH, PETER COLEFAX, J. L. BEEBE, R. W. MILLAR, B. F. GILLES, GREGSON BAUTZER, F. H. RICKETSON, JR., E. C. RHODEN, J. B. BERTERO, G. L. STERLING, JR., G. H. HEYMAN, JR., ALAN MAY, JOHN DOE and RICHARD ROE, as executors or administrators of the estate of C. P. Skouras, Deceased, Fox Midwest Theatres, Inc. and National Theatres, Inc.,
Defendants.

*New Castle December 5, 1957.*

*Irving Morris,* Wilmington, and *Milton Paulson,* New York City, for plaintiff.

*William S. Potter* and *Henry R. Horsey,* of Berl, Potter & Anderson, Wilmington, and *O'Melveney & Myers,* Los Angeles, Cal., for defendants National Theatres, Inc., and Fox Midwest Theatres, Inc.

*Edwin D. Steel, Jr.,* and *Andrew B. Kirkpatrick, Jr.,* of Morris, Steel, Nichols & Arsht, Wilmington, and *Bryon Spencer,* Kansas City, Mo., for defendant E. C. Rhoden.

MARVEL, Vice Chancellor: Plaintiff, who alleges that she has been a shareholder of the defendant, National Theaters Inc., since September 1952, sues derivatively for the benefit of that corporation and its wholly owned subsidiary, Fox Midwest Theatres, Inc. The complaint seeks relief for acts allegedly occurring before as well as after the September 1952 date, plaintiff's theory being that having allegedly been a stockholder of Twentieth Century Fox Film Corporation from 1941 until September 1952, she has an equitable right to sue derivatively for the benefit of that corporation's interests as presently incorporated after reorganization. She contends that such right was not destroyed by the exchange in September 1952 of her shares in Fox of New York for shares in the defendant, National Theaters, Inc., under the provisions of a reorganization plan approved by stockholders following federal anti-trust action.

Prior to such reorganization Twentieth Century Fox Film Corporation, a New York corporation, was engaged in the business of making, distributing and exhibiting motion picture films. Not only did Fox of New York produce films on a large scale but also through its wholly owned subsidiary, National Theaters Corporation, a Delaware corporation, and that corporation's subsidiaries, including the wholly owned Fox Midwest Theatres, Inc., indirectly owned and operated numerous theatres in which Fox films were shown.

As a result of an anti-trust action by the United States brought for the purpose of eliminating monopolistic practices in the motion

picture industry a consent decree was entered on June 7, 1951, under the terms of which Fox was directed to divorce its film production and distribution assets from its theatre assets within the United States. Under a plan designed to meet the terms of the decree, National Theatres, Inc. was organized in Delaware and on September 27, 1952 all of the stock of National Theatres Corporation [1] was transferred by Fox of New York to this new corporation. On the same date all of the stock of National Theatres, Inc. was delivered to another new Delaware corporation, Twentieth Century Fox-Film Corporation, and shares of Fox of Delaware and of National Theatres, Inc., were then distributed to the shareholders of Fox of New York, including plaintiff, and Fox of New York and the former National Theatres Corporation were then dissolved. As a result of these corporate changes and resulting stock distribution, plaintiff since September 29, 1952 has held two shares of stock for each share originally held by her in Twentieth Century Fox Film Corporation of New York, one such share representing her interest in Fox's film production business and the other her interest in Fox's theatre business.

The complaint seeks a decree for an accounting by the individual defendants of their activities in the field of theatre ownership, it being contended that such defendants as directors of either National Theatres Corporation or of National Theatres, Inc. or of both these corporations at various times during the period covered in the complaint, diverted corporate opportunities to E. C. Rhoden. In turn, National Theatres, Inc., Fox Midwest Theatres, Inc., and the individual defendant, Rhoden, who is charged with having dominated his fellow directors and officers, have moved to dismiss portions of the complaint on the grounds that plaintiff's shares did not devolve upon her by operation of law and that accordingly she may not complain of matters which occurred prior to September 29, 1952, the date on which she became a stockholder [2] of National Theatres, Inc., § 327, *Title* 8 *Del.C.* and *Rule* 23(b), *Delaware Court of Chancery, Del.C.Ann.* In the alternative the corporate defendants have moved to dismiss the

---

1. By change of name this corporation meanwhile had become Wesco Theatres Corporation.

2. I reject defendant Rhoden's contention that plaintiff fails to allege dates.

complaint insofar as it complains of acts occurring more than three years before the filing of the complaint, and the defendant, Rhoden, moves for dismissal on the grounds that the complaint fails to meet the requirements of Rule 9(b) in its averments of fraud. All appearing defendants have moved under Rule 12(e) for a more definite statement.

The appearing defendants' motion to dismiss the complaint insofar as it complains of acts allegedly occurring prior to September 29, 1952 is based on § 327 of *Title* 8 *Del.C.* and identical language found in Rule 23(b) of this Court. § 327 provides as follows:

> "In any derivative suit instituted by a stockholder of a corporation organized under the laws of this State, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law."

Defendants contend that because the words "devolve" and "operation of law" imply the absence of any voluntary action, plaintiff cannot successfully contend that she became a stockholder of National Theatres, Inc. under the exception in the statute inasmuch as she attended the stockholders' meeting called to pass on the proposed reorganization of the Fox motion picture interests and voted with the large majority which approved the plan under which she became a stockholder of National Theatres, Inc.

In support of such contention defendants first cite the case of *Myer v. Myer*, 271 *App. Div.* 465, 66 *N.Y.S.2d* 83, 89, a case in which the plaintiffs had acquired title to stock in the corporate defendant as a result of their father's creation of an inter vivos trust in which the father reserved a life estate in dividends payable from the trust corpus. The Court held that in view of the affirmative actions taken in creating the trust, plaintiffs had not become stockholders by operation of law within the meaning of the New York statute governing derivative actions, and dismissed the derivative action insofar as it complained of acts allegedly occurring prior to the date on which plaintiffs had become stockholders. The Court reasoned that "* * *

plaintiffs' title came, therefore, by contract with their father, and not by the intervention of any court or legal forum, or under other circumstances that might be considered a transfer by operation of law."

Defendants also cite cases involving corporate mergers in which it has been held that stamp or transfer taxes are payable on the issuance of new stock certificates by the resulting corporation in view of the voluntary steps necessarily taken in order for stockholders to receive such new certificates, *Emporium Capwell Co. v. Anglim,* 9 *Cir.,* 140 *F.2d* 224.

I am not persuaded, however, that the purpose for which § 327 of *Title* 8 *Del.C.* was enacted that is "* * * to prevent what has been considered an evil, namely, the purchasing of shares in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock * * *", *Rosenthal v. Burry Biscuit Co.,* 30 *Del.Ch.* 299, 60 *A.2d* 106, 111, is served by adopting the rigid interpretation urged by defendants. The simple fact is that anti-trust action against Twentieth Century Fox Film Corporation, National Theatres Corporation and others having eliminated to the Government's satisfaction an alleged monopolistic situation in the Fox system, plaintiff went along with a plan designed to meet the terms of the consent decree. It has been pointed out by this Court that the statute was not passed to prevent the correction of corporate wrongdoing, *Maclary v. Pleasant Hills, Inc.,* 35 *Del.Ch.* 39, 109 *A.2d* 830, and plaintiff's vote for the plan should not be deemed a vote to absolve corporate directors from suit. In my opinion, plaintiff is not barred by the statute [3] from complaining of matters which allegedly took place when she was a stockholder of Fox of New York.

As stated in *Magill v. North American Refractories Corporation,* 36 *Del.Ch.* 185, 128 *A.2d* 233, 236:

"That clear and unambiguous language in a statute is ordinarily the conclusive evidence of legislative intent is an ele-

---

3. The literal language of the statute has not been allowed to operate as a rigid bar to stockholder suits to cancel improperly issued promoters' stock, although such actions are usually considered derivative in nature, *Ballantine on Corporations Rev.Ed.* § 363 p. 851 *et seq.*

mentary rule. But, like all rules of statutory construction, it has its limitations. Literal reading of language leading to results quite inconsistent with the general intent of a statute is to be avoided."

In *Rosenthal v. Burry Biscuit Corp., supra,* this Court stated that the sole purpose of § 327, *Title* 8 *Del.C.* was to prevent an evil, namely the purchase of shares for the purpose of bringing a derivative action based on transactions antedating such purchase. Plaintiff is not such a purchaser and the fact that she holds two pieces of paper rather than one as evidence of her 1941 investment in Fox of New York should not, in my opinion, foreclose her from complaining of acts antedating the incorporation of National Theatres, Inc. when such corporation is in effect a successor to Fox of New York.

Unlike the situation in the case of *Myer v. Myer, supra,* plaintiff was not a direct party to a transaction which made her a stockholder de novo. She purports to sue for the benefit of a business enterprise in which she has held an equitable interest since 1941. The motion to dismiss based on § 327 of *Title* 8 *Del.C.* will be denied.

The appearing defendants also attack the complaint on the grounds of vagueness. It is contended that the complaint not only fails to disclose the precise nature of the acts complained of and where and when such acts occurred but that the averments in the complaint concerning fraud lack the particularity required by Rule 9(b). It is also not made clear in the complaint how Rhoden was able to dominate the Fox theatre business prior to the time he became a director of National Theatres, Inc. in 1953.

Plaintiff replies that the complaint alleges that plaintiff "* * * had been continuously a stockholder of Fox since in or about 1941 * * *", that Rhoden is alleged to have been the dominant officer and director of National Theatres Corporation and of Fox Midwest Theatres, Inc. "* * * at all times herein mentioned * * *", that Rhoden is charged with breaches of fiduciary duty and that inasmuch as he knows of his personal and corporate business dealings in the theatre world over the years in question he can, if he sees fit, answer the claims made against him.

The complaint is primarily directed against Rhoden, however the exhibits to the complaint disclose that Rhoden was not a director of National Theatres Corporation at any time since 1941. Moreover, there is no specific allegation that Rhoden prior to 1953 was ever a director or officer of Fox of New York or of any other corporation at any time a part of the Fox system other than the subsidiary, Fox Midwest Theatres, Inc. Finally while the complaint prays for equitable relief generally, its specific prayer for corporate relief seeks an accounting for profits and damages rather than rescission.

In brief, the complaint is so loosely drawn that the appearing defendants should not be forced at this juncture to file a responsive pleading. I so decide because it is no answer to defendants' demand for more information to say that knowledge of the matters complained of is necessarily in the possession of the moving parties. While motions under Rule 12(e) are not favored because of their delaying effect, in order to test the sufficiency of a complaint in whole or in part the Court should have a reasonably complete account not only of the transactions allegedly causing corporate injury, giving pertinent dates and places, but also a statement of the appropriate relief sought. See *Moore's Federal Practice* (2nd ed.) Vol. 2, § 12.18, p. 2303 *et seq.*, and compare *Glassberg v. Boyd*, 35 *Del.Ch.* 293, 116 *A.2d* 711.

Plaintiff will be directed to state her complaint more definitely, setting forth more specifically the transactions complained of both as to time and place and identifying the corporate officers of those specifically charged with wrongdoing. The complaint should also state more clearly the type of relief sought. If justified the motions based on the statute of limitations and Rule 9(b) may be renewed after the filing of a more definite statement.

Order on notice.